IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Ricardo Fishburne, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 8:23-cv-05469-TMC |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| SC Department of Corrections, Lt. ) | |
| Banks, Lt. Ward, Capt. Cleave, Lt. ) | |
| Jones, Ofc. Jackson, Classification ) | |
| Jackson, Director Bryan Stirling, ) | |
| Regional Director W. Davis, Warden ) | |
| Nelson, Central Classification, and ) | |
| Gilliam Psych Hospital, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Plaintiff Ricardo Fishburne, proceeding *pro se*, filed this action in state court, raising claims under 42 U.S.C. § 1983 and the South Carolina Tort Claims Act ("SCTCA"). (ECF No. 1-1). Defendants removed the action, (ECF No. 1), and, pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B), D.S.C., this matter was referred to a magistrate judge. Now before the court is the magistrate judge's Report and Recommendation ("Report"), (ECF No. 194), recommending Defendants' motions for summary judgment, (ECF Nos. 135, 163), be granted in part. Specifically, the magistrate judge recommends the court grant Defendants' motions as to Plaintiff's federal law claims and remand Plaintiff's SCTCA claims to state court. (ECF No. 194 at 26). In doing so, he identified multiple, independent bases for dismissing Plaintiff's federal claims, including,

1

Plaintiff's failure to fully exhaust his administrative remedies prior to filing his complaint. *Id*. at 8-13. Plaintiff timely filed objections to the Report. (ECF Nos. 202).[1]

## STANDARD OF REVIEW

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). Thus, "[t]o trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Elijah*, 66 F.4th at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017); *see also Elijah*, 66 F.4th at 460 (noting that "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only"). Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Bros. Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

---

[1] Plaintiff also filed supplemental objections after the deadline. (ECF Nos. 206; 206-3 at 1; 207; 207-1 at 1). Though untimely, the court has reviewed his additional objections out of an abundance of caution.

Additionally, since Plaintiff is proceeding *pro se*, this court is charged with construing his pleadings and filings liberally in order to allow for the development of a potentially meritorious case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017) (noting that "when confronted with the objection of a *pro se* litigant, [the court] must also be mindful of [its] responsibility to construe *pro se* filings liberally"). Accordingly, "when reviewing *pro se* objections to a magistrate's recommendation, district courts must review *de novo* any articulated grounds to which the litigant appears to take issue." *Elijah*, 66 F.4th at 460–61. This does not mean, however, that the court can ignore a *pro se* party's failure to allege or prove facts that establish a claim currently cognizable in a federal district court. *See Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs.*, 521 Fed. App'x 278, 290 (4th Cir. 2013) (noting that "'district judges are not mind readers,' and the principle of liberal construction does not require them to 'conjure up questions never presented to them or to construct full-blown claims from sentence fragments'" (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985))).

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial.'" *Phillips v. Nlyte Software Am. Ltd.*, 615 Fed. App'x 151, 152 (4th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"'In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party.'" *Sellers v. Keller Unlimited LLC*, 388 F. Supp. 3d 646, 649 (D.S.C. 2019) (quoting *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996)). However, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *McKinney v. G4S Gov't Sols., Inc.*, 711 Fed. App'x 130, 134 (4th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of proving that summary judgment is appropriate. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Lane & Roderick, Inc.*, 736 Fed. App'x 400, 400 (4th Cir. 2018) (citing *Celotex Corp.*, 477 U.S. at 322–23). Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).

## BACKGROUND[2]

According to the complaint, in 2016, Plaintiff was assaulted by alleged gang members while being housed in the Monticello dorm at Broad River Correctional Institution ("BRCI"), an institution within the South Carolina Department of Corrections ("SCDC"). (ECF No. 1-1 at 8). He was transferred to a different institution and placed in protective custody following the assault. *Id*. He claims he was later "negligently transferred" back to BRCI in retaliation for filing a lawsuit

---

[2] As Plaintiff is the nonmoving party, these facts are pulled from his complaint.

against SLED. *Id*. When he returned to BRCI, Plaintiff alerted Defendants that he had previously been stabbed at that institution and that the same gangs involved in the attack were still at BRCI. *Id*. at 8. He requested to be placed in protective custody, but his requests were denied. *Id*. at 9.

On or around March 10, 2022, Plaintiff attempted to speak with Officer Jackson while entering the Monticello dorm at BRCI. (ECF No. 1-1 at 5). The two exchanged words, and Officer Jackson "slammed the office door" in his face. *Id*. Immediately afterwards, an inmate, who is allegedly affiliated with a gang, approached Plaintiff and told him not to disrespect the police. *Id*. The inmate walked away but later returned with 5-6 "other gang members" from the left side of the dorm. *Id*. One of those individuals told Officer Jackson to leave the wing "while they took care of Plaintiff." *Id*. at 5-6. Plaintiff claims Officer Jackson knew the inmates were there to assault Plaintiff, but she nevertheless left her post in violation of SCDC policy. *Id*. The inmates subsequently assaulted him, causing him significant injuries. *Id*. at 6. He claims the inmates who assaulted him were not supposed to be on the A-side of the dorm, but that Lieutenant Banks let them on that side anyway. *Id*. at 12.

Plaintiff filed this action in state court, asserting § 1983 claims and SCTCA claims. (ECF No. 1-1). In his complaint, he alleges, among other things, the defendants violated the Eighth Amendment in failing to protect him. *Id*. He seeks $250,000 in damages from each defendant. *Id.*

## DISCUSSION

**Exhaustion of Administrative Remedies**

In their motions for summary judgment and accompanying memoranda, Defendants argue Plaintiff's § 1983 claims should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to filing this action. (ECF Nos. 135-1 at 1; 163-1 at 9). The court agrees.

The magistrate judge set forth the requirements for exhausting administrative remedies in his Report. Neither party objects to his summary of the applicable authority. Accordingly, the court incorporates that portion of the Report here.

> The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A defendant bears the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). The PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Moreover, the exhaustion requirement applies whether the action was filed in federal court or was filed in state court and later removed to federal court. *Blakely v. Ozmint*, C/A No. 4:04-cv-22942-MBS, 2006 WL 2850545, at *2 (D.S.C. Sept. 29, 2006).
>
> Exhaustion is defined by each prison's grievance procedure, not the PLRA, and a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process); *but see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[ ] with the good and leave[ ] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure and that § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g., Ayre v. Currie*, C/A No. 0:05-cv-3410-HMH, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, C/A No. 2:05-cv-2187-DCN, 2006 WL 1341267, at *4 n.3 (D.S.C. May 15, 2006).
>
> To survive a motion for summary judgment asserting a failure to exhaust, an inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir.

2010) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial"); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

The SCDC Inmate Grievance System was succinctly summarized as follows in a recent case in this District:

> SCDC provides inmates with a procedure through which they may file grievances on issues related to their confinement, including actions of staff members toward an inmate. The grievance process is set forth in SCDC Policies/Procedures, "Inmate Grievance System." To summarize the process, generally, an inmate must first submit a Request to Staff Member Form ("RTSM") or Automated Request to Staff Member ("ARTSM"). Thereafter, the inmate must file a Step 1 Grievance Form (10-5), setting forth the issue grieved. Inmates may then appeal an SCDC decision as to the Step 1 Grievance by filing a Step 2 Grievance Form (10-5A). SCDC's response to a Step 2 Grievance is considered the final Department decision on an issue.

*Wiley v. S.C. Dep't of Corr.*, C/A No. 4:22-cv-2343-SAL-TER, 2023 WL 9111416, at *3 (D.S.C. Nov. 30, 2023) (citations to the Inmate Grievance System, SCDC Policy No. GA-01.12, omitted), R&R adopted by 2024 WL 71624 (D.S.C. Jan. 5, 2024).

(ECF No. 194 at 8-10).

In support of their motions for summary judgment, Defendants attached an affidavit of Felicia McKie, the Agency Inmate Grievance Coordinator/Branch Chief within the Office of General Counsel for SCDC whose duties include "overseeing and monitoring the inmate grievance process at all South Carolina Department of Corrections facilities." (ECF No. 135-3 at 3). Therein, McKie sets forth the steps inmates must follow for filing a grievance and exhausting their administrative remedies. *Id*. at 4-9. She also notes she reviewed Plaintiff's records for the purpose of determining whether Plaintiff used all remedies available to him through SCDC Inmate Grievance System prior to bringing this action. *Id*. at 9. She explained Plaintiff filed six grievances

regarding the March 10, 2022 assault. *Id*. at 10. The first grievance, Grievance No. BRCI 0224-21, was processed and the other five, Nos. BRCI 0226-22, BRCI 0228-22, BRCI 0229-22, BRCI 0234-22, and BRCI 0231-22, were returned to Plaintiff as being duplicative. *Id*. Plaintiff did not appeal the disposition of those grievances. *Id*.

In the initial grievance that was completed the day after the assault, Plaintiff provides that, on March 10, 2022, he was attacked by "Level 3" inmates who he claims were allowed in the area in violation of "B.R.C.I./SCDC policy" which requires those inmates to be separated from Plaintiff. (ECF No. 135-3 at 30). He also noted he wrote Director Stirling, requesting protective custody before the incident and claims he should not have been housed in that unit because he had been attacked by other gang members in the past. *Id*. He requested that Defendant Stirling be terminated and that he have his teeth repaired. *Id*.

This grievance was sent to the Office of Inspector General ("OIG") for further review. (ECF No. 135-3 at 10). After the OIG's investigation, the "Step 1" grievance was denied. *Id*. Plaintiff filed a "Step 2" grievance, which was denied on *October* 27, 2023 on the basis that Plaintiff failed to show SCDC staff conducted their job duties improperly. *Id*. Plaintiff, however, filed this action in state court on *September* 13, 2023, which is more than one month *before* he exhausted his administrative remedies. (ECF No. 1-1). As the magistrate judge noted in his Report:

> "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. Exhaustion must be accomplished prior to filing suit. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Because the PLRA makes exhaustion a precondition to filing an action in federal court, a prisoner may not exhaust his administrative remedies during the pendency of the federal suit. *See Coleman v. Smith*, C/A No. 7:21-cv-00387, 2022 WL 3699427, at *5 (W.D. Va. Aug. 26, 2022); *see also Germain v. Shearin*, 653 F. App'x 231, 234 (4th Cir. 2016) ("Exhaustion has not occurred and dismissal is warranted when an institution's appeal process necessarily must continue after the filing of the complaint."). "Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies." *Mills*

8

>*v. Maryland*, C/A No. DKC-17-cv-2305, 2019 WL 13544663, at *2 (D. Md. June 11, 2019), aff'd, 788 F. App'x 924 (4th Cir. 2019)."

(ECF No. 194 at 11-12).

In his objections regarding this issue, Plaintiff does not dispute that he did not exhaust his administrative remedies as to Grievance No. BRCI 0224-21 prior to filing suit. Nor does he argue he was unable to exhaust his remedies as to this grievance or that exhaustion would have been futile. Plaintiff instead claims he was not required to exhaust his remedies because he previously exhausted his remedies as to grievances that concerned the same alleged policy violations as those raised in his grievances following the March 2022 assault and that BRCI failed to correct the "continuing" conditions. (ECF Nos. 190 at 1-3; 202 at 13-14; 206 at 5-11).

For example, Plaintiff notes that, both before and after the March 2022 assault, he filed grievances requesting to be placed in protective custody. (ECF Nos. 144-2 at 19-20; 202 at 9-13). Additionally, he filed a grievance in 2021 alleging he was assaulted because a captain was not at her post. (ECF Nos. 202 at 13; 202-3 at 2-4). Similarly, following the March 2022 assault, he filed a grievance alleging he was assaulted because Officer Jackson left her post. (ECF No. 206-2 at 4). Therefore, because the grievances he filed after the March 2022 assault raised similar issues, he claims he was not required to exhaust his remedies as to Grievance No. BRCI 0224-21.

The court has reviewed the authority Plaintiff cites in support of his argument. *See Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215 (11th Cir. 2010) (finding the plaintiff had exhausted his administrative remedies and that he "was not required to initiate another round of the administrative grievance process on the exact issue each time another request for an orthopedic consultation was denied"); *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (determining the plaintiff was not required to exhaust a new grievance regarding the prison's lockdown policy when he had previously exhausted a grievance containing challenges to that policy). However, it is not

9

persuaded that Plaintiff was not required to exhaust his administrative remedies as to Grievance No. BRCI 0224-21.

Plaintiff appears to overlook that, in the cases he relies on, courts recognize that "separate complaints about particular incidents are [nevertheless] required if the underlying facts or the complaints are different." *Turley*, 729 F.3d at 650. The court finds the facts and complaints raised herein are sufficiently different to require exhaustion of remedies as to Grievance No. BRCI 0224-21. The prior grievances Plaintiff relies on concern an assault that occurred while he was housed at a different correctional institution within SCDC. That grievance was filed approximately seven months before the March 2022 assault. The prior assault and the March 2022 assault involved different assailants and different officers. Moreover, and importantly, the grievances Plaintiff filed following those assaults do not allege all of the same policy violations. For example, in his initial grievance filed after the March 2022 assault, Plaintiff provides he was attacked because Officer Banks allowed inmates from another wing of the Monticello unit to be in that area, which Plaintiff claims was a violation of SCDC policy. (ECF No. 135-3 at 30-32). *See also* (ECF No. 135-8 at 204, 210, 215) (wherein Plaintiff claims he was attacked on March 10, 2022 by inmates who were not supposed to be on the wing). This is not the same violation Plaintiff raised in his previous grievances. For these reasons, Plaintiff's claim that he should not have had to exhaust his remedies because his grievances concern a continuation of the same conduct is inherently flawed.

This case arises out of an assault in March 2022. As McKie explained, the relevant grievance for determining whether Plaintiff exhausted his administrative remedies relating to that assault is Grievance No. BRCI 0224-21, and it is undisputed Plaintiff failed to exhaust his remedies as to that grievance prior to filing his complaint. Because he did not do so, Plaintiff's § 1983 claims are dismissed *without prejudice* and *with leave to refile*. While this result may seem harsh since it

10

appears Plaintiff has exhausted his remedies since filing this action, the court finds its ruling is in keeping with the clear language of the statute that mandates the exhaustion of remedies *prior* to filing suit. A contrary ruling would also encourage future plaintiffs to skirt the exhaustion requirements.

**SCTCA Claims**

Plaintiff also objects to the magistrate judge's recommendation that the court should remand his SCTCA claims to state court. (ECF No. 202 at 2, 26). He contends this court has jurisdiction over these claims under 28 U.S.C. § 1332 because there is diversity amongst the parties and Plaintiff seeks more than $75,000.00 in damages. *Id*. at 1-2. In support of his contention that diversity exists, he claims Defendant Nelson resides in Tennessee. (*Id.* at 2; ECF No. 176-9 at 3). However, for the court to have jurisdiction under 28 U.S.C. § 1332, there must be *complete* diversity amongst the parties. That is, no defendant can be a citizen of the same state as Plaintiff. *See Hoschar v. Appalachian Power Co*., 739 F.3d 163, 170 (4th Cir. 2014) (noting "Section 1332 requires complete diversity among the parties, meaning the citizenship of each plaintiff must be different from the citizenship of each defendant"). Plaintiff does not contest he is a South Carolina citizen. (ECF Nos. 202, 207). Even if one of the many defendants to this case is a citizen of another state, Plaintiff has failed to show that *none* of the remaining defendants are South Carolina citizens, and the pleadings do not support such a finding. *See, e.g.*, (ECF No. 1 at 2) (providing the SCDC is a South Carolina entity).

Defendants removed this action on the basis that the court had jurisdiction under 28 U.S.C. § 1331 because the complaint raised a federal question. (ECF No. 1). As discussed herein, the court now dismisses Plaintiff's § 1983 claims. Therefore, the only remaining claims in this action are those brought under the SCTCA. As such, the court has the authority to decline to exercise

supplemental jurisdiction over such claims and remand them to state court. *See* 28 U.S.C. § 1367(c)(3) (granting the court the authority to decline supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction).

In *Shanaghan v. Cahill*, the Fourth Circuit explained that, when determining whether to retain jurisdiction over state claims when all federal claims have been extinguished, trial courts should consider the following factors: (1) convenience and fairness to the parties; (2) the existence of any underlying issues of federal policy; (3) comity; and (4) judicial economy. 58 F.3d 106, 110 (4th Cir. 1995). The court has reviewed these factors, and, while it understands Plaintiff's position that the court should retain jurisdiction over the SCTCA claims given its familiarity with the case, ultimately, the court finds the magistrate judge's reasoning for remanding those claims more persuasive. As the magistrate judge recognized, South Carolina state courts have more knowledge and experience in adjudicating SCTCA claims, and the State of South Carolina has an interest in resolving Plaintiff's claims against SCDC under state law. (ECF No. 194 at 25-26). Accordingly, Plaintiff's objection on this issue is overruled, and his state law claims are remanded to state court.[3] The court need not address Plaintiff's remaining objections as the aforementioned rulings are dispositive of the case.[4]

---

[3] The court recognizes that in their memorandum in support of their motion for summary judgment, Defendant Officer Jackson and Defendant SCDC requested the court retain supplemental jurisdiction over the SCTCA claims. (ECF No. 163-1 at 17). However, they did not file any objections to the magistrate judge's recommendation that those claims be remanded to state court, and, in their reply to Plaintiff's objections, they agree with the magistrate judge that the state court is the more appropriate forum for resolution of these claims. (ECF No. 208 at 18).

[4] Plaintiff also objects to his perjury claim not being ruled on. (ECF No. 202-1 at 1). However, the court ruled on his motion at docket entry 211. Therefore, his objection on this issue is moot. To the extent Plaintiff asks the court to hold the defendants accountable for any additional allegations of perjury that were not raised in his motion at docket entry 199, the court reiterates that "there are no civil actions for perjury." (ECF No. 211). Plaintiff's objection as to the court not ruling on his pending counter motion for summary judgment is rendered moot by the subsequent footnote.

## CONCLUSION

For the reasons articulated herein, Defendants' motions for summary judgment, (ECF Nos. 135, 163) are **GRANTED** in part, and Plaintiff's § 1983 claims are hereby **DISMISSED** without prejudice and with leave to refile. The court declines to exercise supplemental jurisdiction over the remaining claims, and Plaintiff's SCTCA claims are hereby **REMANDED** to state court.[5]

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
February 21, 2025

**NOTICE OF RIGHT TO APPEAL**

---

[5] Finally, Plaintiff's counter motion for summary judgment at docket entry 197 is DISMISSED as untimely. Plaintiff filed this motion months after the dispositive motion deadline. (ECF Nos. 128, 141). Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." When determining whether a party's neglect is excusable, courts must consider four factors: "(1) the danger of prejudice to the [non-moving party], (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 365 (1993).

Plaintiff provides no explanation as to why his motion was untimely. Nor does he explain why he could not have raised the arguments in his motion prior to the dispositive motion deadline. Notably, he states in this motion that his previous filings at docket entries 144 and 176 should be construed as his counter summary judgment motion and supplement thereto. (ECF No. 197 at 2). Those filings were his responses to Defendants' motions for summary judgment, which only further supports the notion that his motion for summary judgment could have been filed earlier. Those responses were fully considered by the magistrate judge when he rendered his findings and recommendations in the Report, and they have been considered by the undersigned in his de novo review of the issues discussed herein. The court adds that there is nothing in the counter motion for summary judgment that would alter the court's ruling as to the administrative remedies issue or as to remanding Plaintiff's remaining state law claims. Therefore, Plaintiff is not further prejudiced by the dismissal of this motion. Accordingly, Plaintiff's motion at docket entry number 197 is **DISMISSED**.

13

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.